### India Tea Company v. Anton Petersen.

1. EQUITY—*Will Not Specifically Enforce an Unfair and Unconscionable Contract.*—Equity will not enforce specifically an unfair and unconscionable contract. Before a contract will be specifically enforced it must be fair, equal and just in its terms and the situation of the parties must be such that in specifically enforcing it such remedy will not be harsh or oppressive.

2. SAME—*Right to Specific Performance Not Absolute.*—The right to a specific performance is not absolute, like the right to recover damages in an action at law. Whether the court will compel a party to do the particular thing he has agreed to do, is a matter of sound judicial discretion, depending upon the circumstances of the particular case.

Bill for an Injunction.—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed May 7, 1903.

Statement.—Appellant filed its bill against appellee for an injunction to prevent the latter from soliciting or attempting to take orders for and from delivering teas, coffees, etc., to customers of appellant situated along routes traveled by appellee while in the employ of appellant, and further restraining appellee from in any manner interfering

India Tea Co. v. Petersen.

with appellant's customers and from attempting to divert their trade from appellant for the period of one year, or until the further order of the court.

A preliminary injunction was issued, which on demurrer to the bill was dissolved, and the complainant having elected to stand by the bill, it was dismissed for want of equity, and from this decree this appeal was taken.

It appears from the bill, among other things not necessary to be noted, that appellant has a store in Chicago, and has for several years past been engaged in selling teas, coffees, etc., at retail, and also has certain sales routes, which are conducted by sending out delivery wagons in charge of salesmen and collectors, who are paid for their services as such, and that appellant has the entire city of Chicago and its suburbs divided into a number of such sales routes, of which it is owner and has established at great expense; that it does a large business with its customers located along such routes; that April 13, 1901, it employed appellee, under a written agreement between it of the first and appellee of the second part, in substance as follows:    That for and in consideration of the sum of one dollar in hand paid by the said party of the first part to said party of the second part, the receipt whereof is hereby acknowledged, and for other good considerations hereinafter stated, said first party does hereby employ said party of the second part to assist in carrying on its business in the capacity of deliveryman and collector, or any other capacity therein as said party of the first part may direct, at the weekly wages hereinafter mentioned for and during a period of twelve months from the date hereof, it being expressly agreed that said employment may at any time hereafter be terminated by said party of the first part on payment to said party of second part of whatever sums be due to him as wages on the evening of the day of his actual discharge, subject to the reservations hereinafter stated.    And second party promises and agrees that at all times during the life of this contract he will faithfully and industriously perform the duties of said position as afore-

said, and that he will give said first party thirty days' notice of his resignation therefrom at any time before the termination of said twelve months, and will also give thirty days' notice of his election not to continue in the employment of said party of the first part after the expiration of said twelve months, otherwise said contract is to be taken and held as a continuous contract and agreement from month to month thereafter. And the said party of the second part for and in consideration of the foregoing, hereby expressly agrees, which agreement is of the essence of this contract, that if he shall at any time hereafter be discharged by, or voluntarily quit the employment of said first party, he will not within one year thereafter solicit orders from, or make deliveries of teas, coffees, spices, baking powder or flavoring extracts, either for himself or for any firm of which he may be a member, or by it employed, or for any other individual or corporation, either directly or indirectly, to any of the customers of said party of the first part with whom he may be brought in contact while soliciting or delivering orders for teas, coffees, spices, baking powder or flavoring extracts, while working on the sales routes of said first party or in other capacity, and further that he will not procure others to do what he hereinbefore expressly covenants he will not do, and further that if while acting in the capacity of deliveryman and collector for said party of the first part he shall deliver any goods without collecting the money for same at time of delivery, he shall himself be liable to party of the first part for amount of goods so delivered, and he hereby guarantees to said party of first part for payment of same. It is agreed that in consideration of his services, and of the conditions aforesaid, said party of the second part shall receive as compensation the sum of $12 per week, and as soon and so long as his deliveries and collections shall exceed the sum of $600 per month, he shall receive in addition to the aforesaid weekly wages, a bonus of four per cent each month upon the excess of the amount of said deliveries and collections above said sum of $600 per month, provided

India·Tea Co. v. Petersen.

that the sum of $4 a week will be deducted weekly from said Petersen's wages and shall form a fund, one-half to guarantee that part of this contract which stipulates that said Petersen shall not within one year after leaving the employ of first party, interfere in any way, as provided, with customers he has come in contact with while in the employ of the India Tea Company, and the other half shall form a fund against which the India Tea Company shall charge any goods delivered without pay by said Petersen; that as soon as the fund shall reach the sum of $100 the deductions shall cease, and if all the conditions of this contract have been complied with, $100 shall be refunded to him at the expiration of one year from the date he quits the employment of first party, but in case within the year he shall have solicited orders from or made deliveries in contravention of this contract, then the hundred dollars shall be forfeited as liquidated damages. Petersen shall receive interest on the sum of $100 at the rate of six per cent per annum, payable semi-annually from date of receipt until same is repaid or forfeited. Deductions for the second named fund shall continue until sum of $100 is reached, and so long as the amount owing for goods or chargeable to said fund shall exceed the balance at credit of said sum, it may be suspended at the option of the India Tea Company and resumed whenever it shall see fit. Any balance remaining to credit of last named fund, after all commissions due said Petersen shall have been satisfied, shall be paid over to said Petersen, at the termination of the engagement.

Appellee was employed under said contract from its date until January 20, 1902, and traveled certain routes specified in the bill, and while so in the employ of appellant took a large number of orders from its customers; that appellee left appellant's employ on said January 20th, and from that time solicited the trade of certain of appellant's customers (naming them) on his own account, and has and threatens to continue to solicit orders from and deliver goods to other customers of appellant; that appellee has

since said January 20th engaged in the business of selling teas, coffees, etc., to customers of appellant along said route so traveled by appellee while in appellant's employ, in direct violation of his said contract, and that the number of said customers on said routes exceeds 700; that the action of appellee in that regard will greatly injure the business of appellant, and that appellee is financially irresponsible and unable to respond in damages to appellant, which the latter has sustained and may sustain by reason of appellee's said alleged wrongful conduct.

HERBERT S. DUNCOMBE, attorney for appellant.

SIMS & WATERMAN, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

The bill seeks the specific performance of a negative covenant by appellee in the contract, namely, his agreement not to solicit orders from appellant's customers along the routes traveled by him for the period of one year after he quit its employ.

For appellant it is contended that the learned chancellor erred in decreeing a dissolution of the injunction and in dismissing the bill for want of equity. It is claimed that previous decisions of this court, among others Darnell v. Geis, 78 Ill. App. 493, Cahill v. Madison, 94 Ill. App. 216, and Hoops Tea Co. v. Dorsey, 99 Ill. App. 181, are controlling in this case. We think not. In the Darnell case the only question decided was as to whether the contract there in question was in restraint of trade. The Cahill case, while in some respects similar to the case at bar, passes upon a contract materially different from the contract in this case. In the last case we said, among other things, in speaking of the enforcement of the contract, "Each case must depend upon its own peculiar facts and circumstances." Also in the Dorsey case the contract, while sustained by the court, differs materially from the one here in question. To review these cases would unnecessarily extend this opinion without profit, as we think this case must be determined solely by the contract here sought

India Tea Co. v. Petersen.

to be enforced, which, although it may not be void because in restraint of trade, nor because it is unilateral, as claimed by appellee, neither of which matters we deem it necessary to and we do not decide, we are of opinion that by its terms it is unfair and unconscionable, and for that reason equity will not specifically enforce it in the respect sought by this bill.

By reference to the statement it will be seen that the appellant could terminate the contract by discharging appellee at any time without notice, while appellee is thereby required to give appellant thirty days' notice in case appellée desired to resign; also that while appellee was to receive $12 per week for his services, and when his deliveries and collections should exceed the sum of $600 per month he should receive in addition to his weekly wages four per cent each month upon the excess over $600 per month, yet appellee was required to guarantee to appellant all goods sold and delivered without collecting money for the same at the time of delivery, and there should be deducted weekly from appellee's wages $4, which should form a fund, one-half of which should be a guaranty of the provisions of the contract by which appellee agreed that he would not, within one year after leaving appellant's employ, solicit orders from or make deliveries of teas, coffees, etc., either for himself or any one else to any customers of appellant with whom appellee might be brought in contact while in appellant's employ, and the other half should be a guaranty fund against which appellant should charge any goods delivered by appellee without payment therefor. The contract further provides that in case appellee should quit the employ of appellant and should solicit orders from appellant's customers in violation of his contract, then he should forfeit said fund to the extent of $100. We regard these provisions of the contract as harsh, oppressive and unconscionable toward the appellee, so much so that we do not deem it equitable to enforce the provision of the contract sought to be enforced by the bill. The provisions of the contract are largely on the side of the employer and very unfavorable

to the employe, aside from his weekly wages and commissions, and for that reason we think it is unfair and unconscionable.

It is well settled in equity that before a contract will be specifically enforced, it must be fair, equal and just in its terms, and the situation of the parties must be such that in specifically enforcing it such remedy will not be harsh or oppressive. 1 Story's Eq. Juris., Sec. 769; 3 Parsons on Contracts (6th Ed.), 361; Lear v. Chouteau, 23 Ill. 39–42; R. R. Co. v. Reno, 113 Ill. 39–43; Espert v. Wilson, 190 Ill. 629–35, and cases cited; Canal Com'rs v. Sanitary Dist., 191 Ill. 326–31.

In the Espert case the Supreme Court say, citing many authorities:

"When a court of equity is asked to compel the specific performance of the contract, the inquiry may be made whether in equity and good conscience the court ought to specifically enforce it."

And the court further say in the same case, quoting the following language from McDonald v. Hinnick, 147 Ill. 651, viz:

"It is the established rule that courts will decree the specific performance of contracts only when, in the exercise of a sound legal discretion, it finds, from all the circumstances, it subserves the ends of justice. It is never decreed as a matter of course even when a legal contract is shown to exist."

In the Canal Commissioners' case, very recently decided by the Supreme Court, it is said:

"The right to a specific performance is not absolute, like the right to recover damages in the action at law. Whether the court will compel a party to do the particular thing he has agreed to do, is a matter of sound judicial discretion, depending upon the circumstances of the particular case. Although a contract may be legal and enforcible, it must be perfectly fair, equal and just, and such as a court of equity will commend, or it will not be specifically enforced."

Being of opinion that the bill was properly dismissed, the decree of the Circuit Court is affirmed.