## Northwest Side Lumber Company, Appellee, v. Lewis Layton, Appellant.

### Gen. No. 30,386.

1. INJUNCTIONS—*enforcement of negative covenant in contract of employment on ground of unfair competition.* Averments in a bill of complaint for an injunction restraining a former employee of plaintiff from violating a covenant of the contract of employment restricting the defendant's business activities after leaving plaintiff's service, to the effect that if not restrained defendant will continue to carry on a general contracting business, contrary to the agreement, "and indulge in unfair competition with your orator, in direct violation of the terms and conditions of the contract," held to present no grounds for injunctive relief because setting out no specific facts constituting unfair competition and stating only the conclusions of the pleader in respect thereof.

2. INJUNCTIONS—*decree enjoining breach of restrictive covenant in contract of employment as limited by allegations of bill.* A bill of complaint for an injunction restraining a former employee of plaintiff from violating a covenant of his contract of employment restricting his business activities after leaving plaintiff's service, the allegations of which relate mainly to engagement in the business of constructing bungalows and garages, will not support a decree

Northwest Side Lumber Co. v. Layton, 239 Ill. App. 82.

restraining defendant from competing with plaintiff in building construction of all kinds.

3. Injunctions—*enforcement of covenant of employment prima facie in restraint of competition.* Where neither the contract of employment restricting the business activities of the employee after leaving the employer's service, nor the allegations of a bill of complaint seeking to restrain a breach of such contract, indicate that the employer's business involves the knowledge or use of trade secrets or confidential information, and the allegations of the bill, in so far as they inferentially allege solicitation of complainant's customers by the defendant employee, are specifically denied under oath, the contract is prima facie one to restrain competition per se and as such invalid and unenforceable.

4. Injunctions—*allegations essential to support bill for enforcement of negative covenant in contract of employment prima facie purely one in restraint of competition.* Where, so far as appears from the provisions of a contract of employment restricting the business activities of an employee after leaving the employer's service, or the allegations of a bill to restrain a breach thereof, the restrictive clauses of the agreement relate solely to competition per se and hence are prima facie invalid, it is incumbent upon the complainant, in order to establish their validity, to show that there existed some special circumstances which rendered such clauses in the agreement reasonably necessary for the protection of its business.

5. Injunctions—*enforcement of unconscionable negative covenant.* Equity will not enforce a negative covenant in a contract, the provisions of which appear unfair and unconscionable.

6. Injunctions—*sufficiency of bill seeking enforcement of covenant in employment agreement restricting business activities of employee after leaving employer's service.* Where a bill to restrain a breach of a contract of employment restricting the business activities of the employee after leaving complainant's service did not positively show that the contract was other than one relating solely to competition per se, and in so far as it inferentially alleged circumstances entitling complainant to relief notwithstanding the prima facie invalidity of the covenant sought to be enforced it was met by the denials of a sworn answer and supporting affidavits, it was error to refuse to dissolve a temporary injunction entered upon such bill.

Interlocutory appeal by defendant from the Circuit Court of Cook county; the Hon. Francis S. Wilson, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925. Reversed. Opinion filed December 8, 1925.

RYAN, CONDON & LIVINGSTON, for appellant; DAVID J. GREENBERG, of counsel.

ARCHIE H. COHEN, for appellee.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This is an appeal from an order overruling and denying a motion of defendant to dissolve or modify a temporary injunction entered upon a bill of complaint seeking a permanent injunction against the violation of a contract between the parties. The motion was based upon an answer subsequently filed and certain affidavits.

Complainant was engaged in constructing buildings, particularly garages and bungalows. After defendant had been in its employ for a time they entered into the contract in question. It is one of employment whereby complainant agrees to employ defendant as construction sales manager for one year from January 2, 1925, at a compensation of $75 per week, subject to its termination on 30 days' notice by either party, and defendant in consideration thereof agrees to perform the duties required of him and not engage in any other employment during the term of the contract, and particularly by paragraph 4 of said agreement:

"That at the expiration of the one (1) year term herein provided for, or upon sooner termination of his employment by the said first party, by his resignation, discharge by the said first party or for any other reason, he will not engage in any capacity, in the business of constructing, remodeling or repairing bungalows, cottages, sheds, garages or any other buildings or structures of any kind, nature or description, or in the making or securing of any contracts pertaining to the same, either for himself or for any other person, persons, firm, firms, corporation or corporations, in any territory within a radius of fifty miles from the

site of the present city hall,  *  *  *  for a period of one (1) year from the time he leaves the employment of the said first party."

In the event of a violation of this provision defendant also agreed to pay as fixed and liquidated damages $5,000, to secure the faithful performance of which he executed a note to complainant for that sum.  By amendment said paragraph 4 was restricted to the construction of *frame* buildings and structures of the nature referred to.  It is conceded that in disregarding such restriction the injunction is too broad and in that respect must be modified.

The injunction restrains defendant (1) from interfering with the business of complainant or its agents, servants, etc., in operating the same; (2) from engaging in any capacity in the business of constructing the buildings mentioned in provision 4 of the contract (without regard to said amendment) or in making or securing any contracts pertaining to the same within the radius of territory limited in the contract; (3) from inducing or attempting to induce persons not to negotiate or deal with complainant, and (4) from exhibiting or distributing printed or other matter within the radius aforesaid, or any literature bearing the name of the said defendant in connection with the construction of buildings as described in said contract.

Omitting the formal and less important averments of the bill, those most vital to the claim for relief outside of those referring to the contract are in effect as follows:

That in connection with its lumber business and the construction of buildings generally, of which defendant had entire supervision, complainant was particularly engaged in the construction of garages and bungalows, for which it had a high reputation; that it had a large salaried force in its garage construction department and defendant had charge of all the salesmen therein as well as of collections, advertising, its mailing

list and a list of names of owners of vacant property which it had procured and listed as prospective purchasers; that it advertised by the trade names of ''Best Built Garages'' and ''Best Built Bungalows,'' and through such advertising and such lists it was enabled to communicate with prospective customers; that defendant had no experience in the erection of buildings of any kind previous to his employment by complainant, and was trained in complainant's method of advertising and making contracts; that on April 18, 1925, without prior notice, as provided for in the contract, defendant left his said employment; that he withdrew said note for $5,000 from complainant's vault and ''sought to procure for himself'' (but it is not alleged that he did procure) ''valuable data entrusted to his care containing the names of prospective purchasers of garages,'' which was missing after he left complainant's office (but it is not alleged he took it); that thereafter he was instrumental in organizing a corporation under the name of ''Lewis Layton Company'' to carry on a general construction business including the construction of garages and buildings of all kinds, which subsequently changed its name to ''Wolberg-Layton Company,'' and that defendant thereby in association with others violated the terms of the contract by carrying on said line of business within such radius; that he employed similar language to complainant's advertisements by advertising the ''Layton Bilt Garage,'' and has deliberately ''set about to use the said knowledge and experience which he gained while in the employ of your orator in injuring your orator's business and for the purpose of causing a loss of patronage to your orator and has wilfully and maliciously circulated false statements regarding your orator and its method of doing business without any provocation therefor or justification for such malicious and false statements so that persons who would likely do business with your orator, hesitate and refrain from negotiating with its

representatives'' (but it is not alleged what these statements were) ; that defendant has destroyed said note, is not financially responsible, and if not restrained will continue to carry on a general contracting business, contrary to the agreement ''and indulge in unfair competition with your orator, in direct violation of the terms and conditions of the contract.''

With respect to the last averment, as there are no specific facts set forth which constitute unfair competition the averment in regard thereto is nothing more than the pleader's conclusion and hence will be dismissed from consideration. The claim for injunctive relief rests mainly, therefore, if not entirely, upon the fact that defendant breached his contract, which the bill in effect seeks to enforce.

It may be said at the outset that even if we assume the contract is prima facie valid, the relief granted is broader than reasonably necessary for the protection of complainant, for the allegations of the bill relate mainly to garage and bungalow construction and defendant is restrained from competing in building construction of any kind.

Before considering the specific averments of the bill it is well to note the nature of the contract itself. It is strictly one of employment containing a covenant against the employee's competition with his employer within a certain time and radius. Such a contract is distinguishable from one of the sale of good will in which the purchaser is entitled to protect himself against competition by the vendor within reasonable restrictions. After noting this distinction it was said in *Herbert Morris, Ltd. v. Saxelby*, 1 App. Cas. [1916] 688:

''In all cases such as this, one has to ask one's self what are the interests of the employer that are to be protected, and against what is he entitled to have them protected. He is undoubtedly entitled to have his interest in the trade secrets protected, such as secret proc-

esses of manufacture which may be of vast value. And that protection may be secured by restraining the employee from divulging these secrets or putting them to his own use. He is also entitled not to have his old customers, by solicitation or such other means, enticed away from him. But freedom from all competition *per se* apart from both these things, however lucrative it might be to him, he is not entitled to be protected against. He must be prepared to encounter that even at the hands of a former employee. * * * That doctrine does not mean that an employer can prevent his employee from using the skill and knowledge in his trade or profession which he has learned in the course of his employment by means of directions or instructions from the employer. That information and that additional skill he is entitled to use for the benefit of himself and the benefit of the public who gain the advantage of his having had such admirable instruction. The case in which the court interferes for the purpose of protection is where use is made, not of the skill which the man may have acquired, but of the secrets of the trade or profession which he had no right to reveal to any one else,—matters which depend to some extent on good faith.''

In *Atwood v. Lamont,* L. R. [1920] 3 K. B. 571, it was said that considerations of public policy come in and make it necessary for the court to jealously scrutinize agreements of this nature, and that ''the practice of putting into these agreements anything that is favorable to the employer is one which the courts have to check.'' It further said: ''An employer is not entitled by a covenant taken from his employe to protect himself after the employment has ceased against his former servant's competition *per se.* * * * An employer may not, after his servant has left his employment, prevent that servant from using his own skill and knowledge in his trade or profession, even if acquired when in the employer's service.''

Similar contracts of employment where injunctive relief was denied and this doctrine upheld were before

the court in *Clark Paper & Mfg. Co. v. Stenacher*, 236 N. Y. 312; *Menter Co. v. Brock,* 147 Minn. 407; *Sternberg v. O'Brien,* 48 N. J. Eq. 370; *Samuel Stores, Inc. v Abrams,* 94 Conn. 248, and the *Saxelby* and *Lamont* cases above referred to.

Considering such contracts in some of these cases the courts lay emphasis on their imposition of unreasonable and unfair restrictions upon the right to labor. In the *Sternberg* case it was said that before depriving a person of such right or abridging it, the court should consider with the utmost care whether on a careful comparison of consequences it may not do more injustice than justice. In the *Abrams* case the court referred to the fact that "in a restrictive covenant between an employer and employee there is small scope for the right of labor and trade and a correspondingly small freedom of contract." In the *Stenacker* case the court referred to such a contract as being an indirect way of preventing an employee from leaving his employer's services.

It will be noted that there is nothing in the contract itself nor in the allegations of the bill that indicates that complainant's business involved the knowledge or use of trade secrets or the imparting to defendant information of a strictly confidential nature used in the conduct of the business which he might properly be restrained from divulging. There is certainly nothing peculiar about complainant's business to suggest the use of any such secrets or information.

Nor is it expressly alleged in the bill that there was any solicitation of complainant's customers. If such a claim is left for inference from the fact that said lists were missing after defendant left complainant's employ, not only is the taking and use of them specifically denied under oath, but the inference is too vague to supply the absence of a direct allegation. Prima facie therefore the contract appears to be one to restrain competition *per se.*

In the *Stenacher* case, *supra,* it was held that the employer is not entitled to protection against all competition *per se* on the part of the employee apart from divulging trade secrets or putting them to the employee's use or enticing away the employer's customers. But none of these exceptions is expressly relied upon in this case. So far as appears from the contract or the bill, the restrictive clauses of the agreement relate solely to the competition *per se* and therefore are prima facie invalid, and to establish their validity it is incumbent on complainant to prove that there existed some special facts or circumstances which rendered them reasonably necessary for the protection of its business. (*Bowler v. Lovegrove,* L. R. [1921] 1 Ch. Div. 642, 650.)

The averments of the bill with respect to advertising and complainant's method of doing business set forth nothing novel or that may not be employed by others in the same line of business, nor such similarity of advertising as tends to confusion or the detriment of complainant. And so far as the use of the defendant's name either alone or in connection with the corporation organized by him is concerned, there is no averment to indicate that it carries with it the good will of complainant's business.

Without further analysis of the bill it is enough to say that its averments not only do not positively set forth but the answer and affidavits deny the existence of those elements recognized by leading authorities as essential to injunctive relief by reason of an employee's breach of an agreement not to compete with his employer's business after leaving the latter's employment.

It is urged by appellee that the agreement not to engage in such business will be enforced because it is a negative covenant. But it is a recognized rule that a negative covenant will not be enforced where provisions of the contract appear unfair and unconscionable,

as would be the case in a contract of this nature if the elements essential to its enforcement are lacking. As said in *Victor Chemical Works v. Iliff*, 299 Ill. 532:

"An injunction against the breach of a negative covenant in any case is, in effect, enforcing specific performance. * * * If a contract is palpably unfair and inequitable and complainant is attempting to enforce an unconscionable bargain, it is not entitled either to the equitable remedy of injunction or of specific performance." (See also *India Tea Co. v. Petersen*, 108 Ill. App. 16.)

Answering a like contention in *Clark Paper & Mfg. Co. v. Stenacher, supra*, the court said:

"An express negative covenant not to work for another will not, as a rule, be granted save in those exceptional cases where, by reason of the peculiar or extraordinary character of the services a violation of an agreement will cause injury to the employer for which an action at law will afford no adequate remedy. * * * In the cases where the court has enforced a negative covenant by an employe not to work for another * * * the element of trade secrets or unfair dealing has been controlling and important."

In view, therefore, of the nature of the contract, the inadequacy of the averments to show facts and circumstances that would justify relief, and the express denials that any such exist, we think the court erred in not dissolving the injunction. Therefore the order will be reversed.

*Reversed.*

Gridley and Fitch, JJ., concur.