[No. 4661.   Decided June 20, 1904.]

RIVERSIDE LAND COMPANY, *Appellant*, v. FRANZ PIETSCH et al., *Respondents*.[1]

EJECTMENT—DEFENSES—ESTOPPEL—ENTRY AND IMPROVEMENTS UNDER ORAL REPRESENTATIONS OF OWNER—MATERIAL AVERMENTS RESPECTING THE ESTOPPEL—ORAL AGREEMENT TO TAKE CASE OUT OF STATUTE OF FRAUDS—PLEADING AND PROOF. In an action of ejectment, in which the defendants pleaded affirmatively an equitable estoppel, in that the land in question, being a hillside and valueless, the plaintiff induced the defendants to enter thereon and ·inclose, irrigate, and improve the same at great expense, under the oral representation that after ten years' possession the defendants would have title thereto, which improvement enhanced the value of plaintiff's other lands in the

[1]Reported in 77 Pac. 195.

vicinity, the defendants can recover only on the theory of the equitable estoppel as alleged, and the allegations that the land was valueless when the defendants entered, and that its improvement enhanced the value of plaintiff's adjoining property, are material allegations, necessary to be shown as part of the oral contract for the sale of the property, by clear and satisfactory evidence, in order to take the case out of the statute of frauds.

SAME—INSTRUCTIONS. Accordingly, in such a case, it is error to instruct that the only question for the jury is whether the plaintiff put the defendants in possession with the understanding aforesaid, thereby eliminating the said allegations as to nonvalue and enhancing the value of other lands, and requires a reversal and a new trial.

APPEAL—REVIEW. A case is to be determined upon appeal on the same theory on which it was tried in the court below.

Appeal from a judgment of the superior court for Spokane county, Prather, J., entered November 1, 1902, upon the verdict of a jury rendered in favor of the defendants. Reversed.

*James Dawson* and *F. E. Langford,* for appellant.
*W. S. Lewis,* for respondents.

PER CURIAM.—This action was brought in the superior court of Spokane county by plaintiff, Riverside Land Company, against defendants, Franz Pietsch and Augusta Pietsch (husband and wife), to recover possession of certain lots situated in the Second Addition to West Riverside Addition to the city of Spokane. The cause came on for trial before the court and a jury, resulting in a verdict and judgment for defendants. Plaintiff appeals.

The complaint alleges, appellant's incorporation under the laws of this state; that it is, and has been for eleven years last past, the owner in fee simple of the above described real estate; that the respondents are in possession of said premises; that they wrongfully and unjustly with-

hold the same from appellant; that on March 20, 1902, appellant served notice in writing upon respondents to vacate and surrender possession of said property, and to remove the fence erected around the same. Appellant asks judgment for restitution and possession, together with its costs and disbursements. Respondents by their answer deny the incorporation of appellant, and also the material allegations of the complaint. The allegations of their first affirmative defense are as follows:

"(1) That for more than twelve years last past the defendants have been, and they now are, in the actual, open, and peaceful possession of the premises described in the plaintiff's complaint, to wit: lots 12, 13, 14, 15, 20, 21, 22, and 23, in block 8, of the Second Addition to West Riverside Addition to Spokane Falls (now Spokane), in the city and county of Spokane, Washington, with color of title thereto, and have cultivated and improved the same and planted thereon and grown and cultivated a large and fruitful orchard which is of great value. (2) That at the time the defendants entered upon said premises it was wild, hilly and rugged waste and in its natural state, a steep hillside covered with rock and undergrowth and small pine timber, and regarded as of no value whatsoever, and destitute of any water rights for irrigation and cultivation. (3) That by and with the knowledge and consent of the plaintiff, defendants entered upon the said land and cleared and improved the same, and reduced it to a high state of cultivation, and purchased and obtained water rights therefor and conducted water thereon, and in and about so doing expended large sums of money, labor, skill, and care, and during the time that defendants were so doing plaintiff very well knew of such facts and directed the defendants so to do, and positively assured the defendants that, by so doing and with ten years' peaceable possession, they should become the absolute owners thereof, free from any claim or alleged claim of the plaintiff thereto, because of the fact that the improvements being made thereon by these defendants was of great value to other real estate claimed by the

plaintiff in the immediate vicinity, and because the said premises in the natural state were totally valueless, without which assurance the defendants would not have so acted nor made such improvements, nor purchased such water rights, nor so rested upon their said rights thereto, and the defendants further allege that the improvements and cultivation and fruit trees and other improvements are of such a character and so attached to the soil that they cannot be removed, but would be an utter loss to the defendants, at a great profit to the plaintiff, should these defendants be ejected therefrom, and that plaintiff is, and ought to be, estopped from questioning the defendants' right or possession thereof or title thereto, or from in any manner interfering with the peaceable and quiet enjoyment of the premises and improvements."

The second affirmative defense alleges ten years' adverse possession of the premises, prior to the commencement of the action. This defense seems to have been abandoned at the trial. The reply denies the material allegations of the first affirmative defense, except that respondents entered upon these premises with the knowledge and consent of appellant.

Under the issues, as formulated and tendered by the pleadings, the burden of proof was cast upon respondents regarding their plea of estoppel, as alleged in their first affirmative defense above noted. Respondents' evidence at the trial tended to show, that in the month of February, 1892, they were the owners, by purchase from appellant company, of lots 16, 17, 18, and 19, in said block 8, which are contiguous to the lots in question; that at such time respondents inclosed these lots, with the lots in question, and also four other lots in said block 8, then being the property of appellant, by building a fence around all such real estate, except portions of lots 12 and 27 abutting upon the east line of this block 8. Respondent Pietsch testified

that in April and May, 1891, he cleared and grubbed the lots in controversy; using the following language:

"Well, those are side hills, you know, steep hills; they were overgrown with large pine timber, and with dense growth of underbrush, and those trees were overshadowing it; one side is on the east, and the other side is on the south, so when the sun came around, it would shade it, I could not raise anything; so I was to establish a nursery there, so I had to make me sunshine and air. . . . Q. State whether or not it was in its natural state, . . . when you went upon it. A. What it was, in the natural state? Q. Yes. A. A wilderness, that is all; rocks, that is all it was, and trees."

Mr. Pietsch further testified, that he bought another lot of appellant, on which property there was located a spring, in order to irrigate the lots in controversy, and expended considerable labor and money in order to get water thereon from that spring; that, without water upon these lots, they were utterly worthless to witness; that witness in these transactions dealt with one C. F. Clough, as the agent of the appellant; that witness, during his occupancy of such lots, put the same in a high state of cultivation, planted thereon two hundred bearing fruit trees, which cannot be moved without great injury being done them; that the improvements and labor placed and expended on such lots by these respondents were over $1,500 in value, and are of a permanent nature; that Clough, president Perkins, and secretary Stevens, of appellant company, were cognizant of respondents' acts regarding the improvement and cultivation of this real estate, and encouraged his acts in that regard. It seems that Mr. Clough, who was the resident agent of appellant company, testified that he had authority to sell this real estate and receive payments therefor. Mr. Pietsch swore that, in the spring of 1892, Mr. Clough came there, looked everything over, and smiled and said,

"Mr. Pietsch, when you have this garden ten years in peaceful possession, it will be yours." His testimony continues:

"And he came occasionally and told me the same story over and over again, more than five times to me, and I believed it in him, too; I took his word for it. . . Q. Do you remember Mr. Clough being down there at any time with the president of the company? A. Yes sir. . . Q. What did they say, Mr. Perkins and Mr. Stevens and Mr. Clough, on the occasion of that visit; state what they said and did, with reference to this particular land now in controversy? . . . A. They tapped me on the shoulder and they said, 'We wish we had half a dozen more men on our place here like you are yourself.' Q. Well, what did they say about your work there on the garden, this disputed land, now? A. Well, they said, 'You have done just right, nobody can make—the hillsides are no good, anyhow; nobody can make use of those hillsides but you, and you done just right,' they said, 'and we only wish we had half a dozen more such men on the land as you are.'"

This witness also testified that he induced appellant to sell four of the lots inclosed with those now in controversy, one of which was sold to one Murphy in 1895, and the other three to one Pritchard. Respondent Franz Pietsch was corroborated by members of his own family testifying regarding the knowledge of Clough of these improvements, which testimony is not seriously disputed. Augusta Pietsch, wife of Franz Pietsch, and one of the respondents herein, testified that, four years after they went into possession of this property, the following conversation occurred between Mr. Clough and her husband:

"Mr. Clough he said—he was outside of the fence, and I was inside of the fence, and Mr. Pietsch was there, too; he said, 'Mr. Pietsch, if you have these ten years in possession,' or how you call it, 'then it is yours,' he say; and we lived over it for awhile. . . . He said last year [1901] . . . 'Mr. Pietsch, do you want to buy those lots?' Mr. Pietsch said, 'I don't have any money.' Then he said, 'If

you have that one year more, it must be about the time when you have that ten years, then it is yours; must be about around the time.'"

Louis Pietsch, a son of respondents, testified that the value of the labor and improvements expended and placed on these lots by his father was from $1,000 to $1,200. Respondents offered no testimony tending to show that the alleged improvements on these lots in controversy enhanced the valuation of other property in that vicinity belonging to appellant. The record shows that counsel for appellant made frequent objections, and took numerous exceptions, to the rulings of the trial court as to the introduction of testimony in behalf of respondents, concerning the alleged statements of agent Clough and the president and secretary of appellant company, pertaining to the acts of respondents in improving the property in question. Clough testified in part as follows: "At some time in the summer or fall of 1891, Mr. Pietsch asked if there would be any objection to his cultivating a portion of the hillside, and I told him I did not think there would, providing when the property was wanted by the company he would vacate it; he says, 'Certainly'." Witness denies telling Mr. Pietsch that, if he went on these hillside lots, cultivated, and improved them for ten years, he (Pietsch) would get title to the same.

It further appeared, from the evidence, that this realty was valuable property when respondents took possession thereof; that the appellant had kept the taxes paid up on the same; that respondent Franz Pietsch offered to pay Clough, for appellant, the money which the company had already paid for the taxes of 1901 and 1902 on these lots, and the company refused to receive the same. The verdict and judgment above noted in effect established an

estoppel against appellant's "claiming any estate or right of possession in said property." The judgment decreed, among other things, that respondents' "title to said land be and the same is hereby confirmed."

The assignments of error practically present but one question for the consideration of this court on the hearing of this appeal: Whether the evidence adduced by respondents was sufficient, under their first affirmative defense, to warrant the verdict and judgment rendered in the trial court. After a careful consideration of all the evidence found in the record, in connection with the able arguments of counsel on both sides of the present controversy, we are impelled to the conclusion that it was incumbent upon respondents to establish, by a preponderance of testimony, that appellant is estopped from asserting its title to the premises in question, by reason of an alleged parol contract between appellant and respondents, when the latter entered into the possession of and inclosed these lots with the other realty, or shortly thereafter. In other words, respondents took the burden of proving that they were in possession of this property under a parol agreement, complete and definite in its terms, for a valuable consideration moving from them to appellant; and that they (respondents) had fully complied, or were ready and willing to comply, with the terms of such contract on their part, entitling them to a specific performance thereof as against appellant. We are unable to conceive of any other theory, under the issues as formulated by the pleadings and the evidence adduced on the trial, by which respondents were legally or equitably entitled to have judgment entered in their behalf confirming their title in and to the lots described in the above complaint, as against the appellant company.

It is true that, in many instances, while a defense including matters pleaded as an equitable estoppel may not entitle a defendant to affirmative relief in a given case, still, such defense performs the office of a negative resistance to, and defeats, plaintiff's cause of action. Pomeroy, Code Remedies (3d ed.), § 91. A defendant seeking affirmative relief in his answer becomes, *quoad hoc,* plaintiff, and must state the requisite facts constituting his right of action as if he were stating them in a complaint, except that he may refer to and adopt matters stated in the complaint. Phillips, Code Plead., § 260.

There is no question but that, at the time of the commencement of the present action, the legal title to this property was in the appellant. If the respondents are entitled to recover, they must do so under the allegations of their answer, and the proofs in support thereof submitted at the trial. They failed to show that, at the time they entered into possession, "the said premises in their natural state were totally valueless," and, "because of the fact that the improvements being made thereon by these defendants [respondents], was of great value to other real estate claimed by the plaintiff [appellant] in the immediate vicinity," as alleged in their answer. As we read the record, the testimony, though somewhat obscure, tends to show that the market value of this real estate was at that time greater than the alleged improvements. It seems too plain for argument, even granting, without deciding, the sufficiency of this first affirmative defense as a matter of pleading, that the respondents could not ignore such important matters of proof at the trial, in support of their alleged estoppel. Under their pleading in that behalf, the respondents became actors in this controversy. They were not entitled to the relief awarded them by the court

below, confirming and quieting their title in and to these lots, unless they showed, by clear and satisfactory testimony, an oral contract for the sale thereof, made between appellant company and themselves, in conformity to the issues tendered, sufficient to take the transaction out of the operation of the statute of frauds. 2 Warvelle, Vendors, p. 783, quoted with approval in *O'Connor v. Jackson,* 23 Wash. 229, 62 Pac. 761. Courts of equity in the matter of defenses of this nature, will look to the substance rather than to the form thereof. The calling this defense an equitable estoppel does not lessen the responsibility of the parties invoking this doctrine, or warrant us in ignoring fundamental principles as the proper basis for the granting of equitable relief. As we view it, there is nothing disclosed by this record which would divest the legal owner of its title and interest in the property and vest it in the respondents. *Chicago etc. R. Co. v. Reno,* 113 Ill. 39.

It is further assigned that the trial judge erred in giving the following instruction to the jury:

"I will relieve the jury of some of the issues in the case, by holding and finding that the evidence on the part of the plaintiff shows that it is a corporation, competent to sue in this court, and that the evidence on the part of plaintiff shows a fee simple title in the plaintiff, except that the allegations of the defense should be true— that is, that the plaintiff had placed the defendant in possession of the property with the understanding as I have mentioned. So that the only question of fact which the court will submit to you, to find from the evidence in the case, is whether or not the claim of the defendants that the plaintiff put them in possession, with the understanding that I have mentioned, was true, is the only issue which the court will submit to you."

This instruction, and the understanding therein referred to, eliminate from the jury's consideration the above allegations in the answer pertaining to the non-value of this real estate, when respondents took possession thereof, and the improvements, placed by respondents thereon, enhancing the valuation of other real estate in the immediate vicinity, claimed by appellant. These were questions of fact under the issues, which the trial court had no right to ignore. This instruction was, therefore, misleading and prejudicial to appellant. Matters alleged as an estoppel must be proven as charged. "Estoppels never arise from ambiguous facts; they must be established by those which are unequivocal, and not susceptible of two constructions." *Fredenburg v. Lyon Lake M. E. Church,* 37 Mich. 476. 8 Ency. Plead. & Prac., 9-11.

Whether the respondents are entitled to relief, or to recover compensation for their improvements, under issues properly tendered with that end in view, is a proposition not pertinent to this inquiry. This court on appeal will only consider those matters presented to the court below for decision. Within the scope of the issues, the case is considered and determined on the same theory in the appellate as in the trial court. *Sanders v. Stimson Mill Co.,* 34 Wash. 357, 75 Pac. 975, and authorities cited. Having reached the conclusion that the judgment of the court below must be reversed, it becomes unnecessary to consider the remaining assignments of error.

Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.