GEORGE M. WELTY

*v.*

H. R. JACOBS *et al.*

*Opinion filed February 14, 1898.*

1. EQUITY—*jurisdiction to enjoin is substantially co-incident with jurisdiction to compel specific performance.* The jurisdiction of equity to enjoin the breach of a contract is substantially co-incident with its jurisdiction to compel specific performance, as enjoining a breach of contract is a negative specific enforcement of its terms.

2. SAME—*breach of contract may be enjoined if the contract may be specifically enforced.* In general, where a contract may be affirmatively specifically enforced by either party it may be negatively enforced by injunction restraining its breach, if injunction is the only practical mode of enforcement under its terms.

3. SPECIFIC PERFORMANCE—*contract cannot be specifically enforced in absence of mutuality.* A contract cannot be specifically enforced, either affirmatively or negatively, in the absence of mutuality in its terms and requirements.

4. SAME—*part performance not specifically enforced unless provisions are severable.* Courts will not specifically enforce particular provisions of a contract where they do not clearly stand by themselves, unaffected by other provisions which cannot be so enforced.

5. INJUNCTION—*when breach of contract for a theatrical performance cannot be enjoined.* The manager of a theatrical company cannot enjoin the proprietor of a theater from refusing to furnish his theater, stage hands, music, etc., according to the terms of a contract for the appearance of the company on a certain date, nor from letting the theater to another company at that time, as such a contract cannot be affirmatively specifically enforced.

*Welty* v. *Jacobs,* 64 Ill. App. 285, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

BULKLEY, GRAY & MORE, for appellant:

A court of equity will not suffer persons to depart from their contracts at their pleasure, leaving the party with whom they have contracted to the mere chance of

any damage which a jury may give.  *Lumley* v. *Wagner*, 1 DeG., M. & G. 618.

Actors and singers may be enjoined from playing or singing at any other place than the one where they have agreed to play or sing, and in this indirect manner their contracts for personal services may be enforced.  *Lumley* v. *Wagner*, 1 DeG., M. & G. 604; 5 DeG. & S. 485; *Montague* v. *Flockton*, L. R. 16 Eq. 189; *Webster* v. *Dillon*, 3 Jur. (N. S.) 432; *Daly* v. *Smith*, 38 N. Y. Sup. 158.

A court of equity will indirectly enforce a specific performance of a contract by enjoining a breach of its negative covenants, when, from the nature of the contract, it could not enforce specific performance directly. High on Injunctions, sec. 1134, *et seq.*

The leading case upon this question is the case of *Lumley* v. *Wagner*, 1 DeG., M. & G. 604.  In that case there was an express negative covenant on the part of the defendant, a singer, not to sing elsewhere, and the chancellor placed his decision upon that covenant.  The rule laid down in that case has been followed, both in England and in this country, in many cases where there was no express negative covenant, the negative covenant being necessarily implied from the terms of the contract. *Montague* v. *Flockton*, L. R. 16 Eq. 189; *Railway Co.* v. *Railway Co.* 5 DeG. & S. 138; *Railway Co.* v. *Railway Co.* 24 Fed. Rep. 516; *Fredericks* v. *Mayer*, 13 How. Pr. 566; *Singer Sewing Machine Co.* v. *Union, etc. Co.* 1 Holmes, 253; 2 High on Injunctions, sec. 1150; *Daly* v. *Smith*, 38 N. Y. Sup. 158.

Courts will often interfere by injunction when they cannot decree specific performance.  *Telegraph Co.* v. *Railway Co.* 3 Fed. Rep. 423; *Wells* v. *Oregon Railway Co.* 16 Am. & Eng. Ry. Cas. 71; *Wells* v. *Northern Pacific Railway Co.* 18 id. 441; *Singer Sewing Machine Co.* v. *Union, etc. Co.* 1 Holmes, 253.

PARTRIDGE & PARTRIDGE, and JAMES E. PURNELL, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill for an injunction, filed December 28, 1895, in the Superior Court of Cook county, by the appellant, in which he alleged that he was a theatrical manager and proprietor; that on April 9, 1895, he entered into a written contract with H. R. Jacobs, manager, and representing M. J. Jacobs, proprietor, of the Alhambra Theater in Chicago, to play his company in the "Black Crook" at such theater for seven consecutive nights, commencing December 29, 1895; that Jacobs was to furnish the house, well cleaned, lighted and heated, together with the stock, scenery and equipments contained therein, stage hands, stage carpenter, fly-men, regular ushers, gas-man, property-man, janitor, ticket seller, door keepers, orchestra, house programmes, licenses, bill-boards, bill-posting, distribution of printed matter, usual newspaper advertisements, and the resources of the theater in stage furniture and properties not perishable; that Welty was to furnish a company of first-class artists to the satisfaction of Jacobs, together with special scenery, calcium lights, etc., and also, ten days in advance, certain printing, prepaid and free from all charges, consisting of a variety of bills, etc.; that appellant was to receive sixty per cent of the gross receipts up to $5000, and seventy per cent on all over $5000; that if the company should not prove satisfactory to Jacobs, whose judgment was to be conclusive, or if the company should prove not to be as represented, then Jacobs should have the right to cancel the contract by giving appellant at least one week's notice, by mail or otherwise; that appellant's company was not to appear at any other house in the city prior to the date of the performance specified; that if, by any unforeseen accident, fire, or for any reason whatever, Jacobs could not furnish the house for said performance the contract was to become null and void. The bill further alleged that appellant had kept and performed all his covenants; that he had tendered the printing as required, and that

he was ready to furnish a satisfactory company; that he had received no notice from Jacobs that his company was not satisfactory or as represented, and had been given no notice of the termination of his contract, as therein provided; that within the then last thirty days Jacobs had entered into a contract with one U. D. Newell for the Alhambra Theater for the same week that appellant's contract provided for; that Newell claims to be the manager of another company also engaged in producing the "Black Crook;" that Jacobs and Newell were combining and confederating to injure and defraud appellant, as Newell had agreed to produce the play for a less percentage than appellant; that appellant had forty performers under contract, and would be obliged to pay them their salaries whether they performed or not, and that he could procure no other place for his performance during said time and would be compelled to remain idle at great expense; that the money value of his contract could not be determined, either actually or approximately, in any other manner than by carrying out and fully performing it according to its conditions; that Jacobs and Newell had announced their intention of keeping appellant out of the possession and use of said theater; that appellees were financially irresponsible.    The bill prays for an order enjoining appellees from hindering appellant and his company from taking possession of the Alhambra Theater, its appurtenances and stage property, and from hindering, delaying, interfering with or preventing appellant from producing said play in accordance with said contract, and also restraining appellees from using or occupying said theater, its stock, scenery and equipments, during said period of seven days, and from allowing any other person or company to use or occupy the same; and also restraining and enjoining appellees from refusing to furnish to appellant, during such period, the usual and necessary light, heat, music, regular stage hands, stage carpenter, etc., and for general relief.

The injunction was granted, and served on appellees December 28, 1895. On December 30, 1895, a rule was entered on appellees to show cause why they should not be punished for contempt of court in violating this injunction. The next day an order was entered modifying the injunction so as to permit Newell to produce the play at the Alhambra Theater, and Jacobs was ordered to pay into court sixty per cent of the entire receipts received by him at the Alhambra for the week and to pay to Newell thirty per cent of such receipts, and the cause was continued to January 3, 1896. On that day both the appellees answered, replication was filed, and Newell moved for a dissolution of the injunction. Appellee Jacobs in his answer admitted the making of the contract with appellant, but denied that appellant's company was satisfactory or as represented, and alleged that he had notified appellant thereof and had canceled the contract; denied all combination to injure appellant; admitted that he had made a contract with Newell for the same week he had formerly contracted to appellant; denied that appellant had furnished the printing as required, and that he was without remedy except in a court of equity. Appellee Newell in his answer alleged that he had been informed that appellant's contract had been canceled; that on November 29, 1895, he had made a contract with Jacobs to play the Tompkins Black Crook Company in the Alhambra for seven successive nights, beginning December 29, 1895, the contract being in all particulars like appellant's, except as to the percentage of receipts; that as early as December 27 he had removed to the Alhambra a number of articles belonging to his company and had taken possession of the same; alleged various communications and negotiations between all the parties to this suit from December 16 until the bill was filed; that becoming alarmed that Jacobs would close up the Alhambra entirely during that week, he, Newell, had procured an injunction from the circuit court

on December 27, 1895, and had it served on Jacobs the same day, restraining Jacobs from closing up the theater during said week and excluding his company from presenting their play; charges appellant with *laches* and bad faith in suppressing all information in regard to such first injunction, and alleged that appellant's contract was in violation of the statutes which forbid any amusement or diversion on Sunday, so that specific performance could not be enforced.

The cause was heard by the court and a decree entered finding that the injunction had been violated by appellees, and that under the order modifying the injunction there had been paid into court $1134.75; that the equities were with the appellees, and that the appellant had a complete and adequate remedy at law and that the injunction was improvidently issued, and the bill was therefore dismissed and the money ordered returned to Jacobs. Appellant appealed, and asked that the money be retained in the clerk's hands pending the appeal, which was allowed and the money ordered left with the clerk until the final determination on appeal. The Appellate Court affirmed the decree, and appellant has further appealed to this court.

There was no sufficient proof that Jacobs canceled his contract with Welty on any of the grounds stipulated in it, and the question is not whether Jacobs was justified in violating the contract, but whether Welty's bill of complaint for equitable relief can be sustained or he should be remitted to his action at law. Strictly speaking, the bill was not one for specific performance, but for injunction, only. It is clear from its allegations and from the authorities bearing upon the question, that specific performance of the contract could not be decreed. It is not, and cannot be, contended that appellant could have been compelled, by any writ the court could have issued, to occupy the theater with his company of actors and give the performances contracted for, any more than a public

singer or speaker can be compelled specifically to per-
form his contract to sing or speak.　Negative covenants
not to sing or perform elsewhere at a certain time than
a designated place have been enforced by the injunctive
process, but further than this such contracts have not
been specifically enforced by the courts, by injunction or
otherwise. (*Lumley* v. *Wagner*, 1 DeG., M. & G. 604; *Daly* v.
*Smith*, 38 N. Y. Sup. 158.)　In *Lumley* v. *Wagner* there was
an express covenant not to sing elsewhere than at the
complainant's theater, and the injunction was placed on
that ground.

But it is urged that negative covenants may be im-
plied as well as expressed, and when necessarily implied
from the terms of the contract they will be enforced in
like manner,—citing the following cases: *Montague* v.
*Flockton*, L. R. 16 Eq. 189; *Great Northern Ry. Co.* v. *M. S.
& L. Ry. Co.* 5 DeG. & S. 138; *C. & A. Ry. Co.* v. *N. Y., L. E.
& W. Ry. Co.* 24 Fed. Rep. 516; *Singer Sewing Machine Co.* v.
*Union B. & E. Co.* 1 Holmes, 253;　2 High on Injunctions,
(2d ed.) sec. 1150; *Fredericks* v. *Mayer*, 13 How. Pr. 566.
While there was a negative covenant in the contract under
consideration against Welty, it is not important to con-
sider whether or not appellant might have been enjoined
from performing elsewhere than at Jacobs' theater at the
time in question, for it is manifest he could not have been
compelled to perform at said theater.　Before a contract
will be specifically enforced there must be mutuality in
the contract, so that it may be enforced by either, and as
this contract was of such a nature that it could not have
been specifically enforced by appellee Jacobs, it should
not be so enforced by appellant.　*Lancaster* v. *Roberts*, 144
Ill. 213; Fry on Specific Perf. secs. 440, 441; Waterman on
Specific Perf. sec. 196; *Cooper* v. *Pena*, 21 Cal. 411.

But it is urged that courts of equity will by injunc-
tion restrain the violation of contracts of this character
in many cases where they cannot decree specific perform-
ance, and the following among other cases are referred

to: *Western Union Tel. Co.* v. *Union Pacific Railroad Co.* 3 Fed. Rep. 423; *Wells, Fargo & Co.* v. *Oregon Railroad and Nav. Co.* 16 Am. & Eng. R. R. Cases, 71; *Wells, Fargo & Co.* v. *Northern Pacific Railroad Co.* 18 id. 441. Without determining whether there may not be exceptional cases not falling within the general rule, we think the rule is as stated in *Chicago Municipal Gas Light and Fuel Co.* v. *Town of Lake,* 130 Ill. 42, and the authorities there quoted. It was there said (p. 60): "The bill of complaint in this case, though not strictly a bill for the specific performance of a contract, is in substance a bill of that kind. In Pomeroy's Equity Jurisprudence (sec. 1341) it is said: 'An injunction restraining the breach of a contract is a negative specific enforcement of that contract. The jurisdiction of equity to grant such injunction is substantially coincident with its jurisdiction to compel a specific performance. Both are governed by the same doctrine and rules. It may be stated as a general proposition, that whenever the contract is one of a class which will be affirmatively specifically enforced, a court of equity will restrain its breach by injunction, if this is the only practical mode of enforcement which its terms permit.'" It is plain that, as a general rule, to enjoin one from doing something in violation of his contract is an indirect mode of enforcing the affirmative provisions of such contract, although such an injunction may often fall short of accomplishing its object. It is obvious from what has been said and from the authorities that to enjoin appellee Jacobs, as prayed in the bill, from refusing to furnish the usual and necessary light, heat, music, regular stage hands, stage carpenter, ushers, equipments, etc., provided for in the contract, would be the same, in substance, as to command him to furnish them, and without them the use of the theater building would seem to be of little use. It is practically conceded by counsel for appellant that this part of the contract could not be specifically enforced as prayed, or otherwise, in equity, but it is contended that this part of

the contract is merely incidental to the more important part of it, which was the right to occupy and use the theater and its furnishings and give therein the performances provided for, and to exclude from a like occupation and use the other appellee, Newell, and that the injunction was proper for that purpose. This would have been an indirect method of enforcing a part performance of the contract, and courts will not enforce specific performance of particular stipulations separated from the rest of the contract, where they do not clearly stand by themselves, unaffected by other provisions. (*Baldwin* v. *Fletcher*, 48 Mich. 604.) Even if such a decree might have been sustained, we are satisfied the sound legal discretion of the court was not violated in refusing it, or in dissolving the injunction after it was granted. Appellant's remedy, if any he had, was at law.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*