The Bartholomae & Roesing Brewing and Malting Company, Appellant, *vs.* Helen Modzelewski *et al.* Appellees.

*Opinion filed October 27, 1915.*

1. Injunction—*rules applicable to specific performance apply to bill to enjoin breach of negative covenant.* The jurisdiction of a court of equity to enjoin the breach of a negative covenant in a contract is substantially the same as its jurisdiction to compel specific performance of such contract and is governed by the same rules and principles of law.

2. Same—*breach of negative covenant will not be enjoined if there is a want of mutuality.* The breach of a negative covenant in a contract will not be enjoined where there is a want of mutuality in its obligations; and this is true although the contract may be of such a character that the difficulties attending its enforcement against one party may not be encountered in enforcing it against the other.

3. Contracts—*what provision in case of breach is not a penalty.* Where the object of a contract between a brewery company and a saloon-keeper is to secure to the company the profits from the sale of its beer, exclusively, during the life of the contract, a provision for the payment of $50 liquidated damages for each month, during the life of the contract, in which the saloon-keeper fails to keep the agreement will not be regarded as a penalty but as the measure of compensation in case of a breach of the contract.

4. Solicitors' fees—*when allowance on dissolution of injunction is proper.* Where the sole object of a bill is to secure an injunction, and a temporary injunction is issued which is subse-

quently dissolved and the bill dismissed for want of equity, the expense incurred by the defendant for solicitor's fees in securing the dissolution of the injunction, if the amount is reasonable and within the range of the evidence as to the value of the services rendered, is properly assessed against the complainant as damages.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. J. M. O'CONNOR, Judge, presiding.

WINSTON, PAYNE, STRAWN & SHAW, (GEORGE A. KELLY, of counsel,) for appellant.

JAMES P. HARROLD, (TIMOTHY J. FELL, of counsel,) for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

On May 1, 1912, the appellees, Helen Modzelewski and Brun Modzelewski, the owners of the property known as No. 4526 Justine street, in the city of Chicago, entered into a written contract with appellant, the Bartholomae & Roesing Brewing and Malting Company, a corporation, to furnish them with a complete set of saloon and bar fixtures to be used by them in conducting a saloon at those premises. The contract recited that appellees proposed to engage in the saloon business at the above premises and were desirous of purchasing from appellant all of the draught beer sold, used, consumed or given away by them in said saloon premises and of having appellant loan to them a first-class set of saloon furniture and fixtures to be used in the premises, and that appellant desired to sell draught beer to them and to loan them a first-class set of saloon furniture and fixtures. The contract further provided, (appellant being designated as the party of the first part and appellees as the parties of the second part,) among other things, as follows:

"Now, therefore, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth to be kept and performed by the parties hereto, it is mutually covenanted and agreed by and between the parties hereto, as follows:

"(1) The parties of the second part agree to conduct a saloon business continuously and exclusively upon the first floor of the premises 4526 Justine street, Chicago, Illinois, for the period of time extending from the date hereof up to and including April 30, 1917, and further agree that during said period of time they will purchase from the party of the first part, and from no other person, firm or corporation whatsoever, all of the draught beer sold, used, consumed or given away by them in and about said saloon business, and will pay therefor in cash, upon delivery, the market prices of said first party's beers in the city of Chicago, the prices now being $4.50 per barrel for the grade and brand known as 'City' beer and $6 per barrel for the grade and brand known as 'Cabinet' beer. The parties of the second part agree that during said period of time they will not purchase any draught beer for sale, use or consumption on said premises from any other person, firm or corporation than the party of the first part.  *  *  *

"(3) The party of the first part agrees to sell and deliver to the parties of the second part beer for the period of time herein mentioned and at the prices herein named, said deliveries to be made during the regular business hours of said first party, times of riot, strikes, fire, Sundays and holidays excepted, at the option of the first party.

"(4) The said parties of the second part agree to use continuously and exclusively in the conduct of said saloon business the bottled beers as manufactured and sold by the party of the first part, the United States Brewing Company of Chicago and the Val. Blatz Brewing Company, and will pay therefor in cash, upon delivery, the market price of

said bottled beers in Chicago, excepting such bottle beers that are specifically asked for by their patrons.

"(5) The party of the first part agrees to loan to the parties of the second part a first-class set of saloon furniture and fixtures, the style and quality of which have been previously agreed upon by the parties hereto, during the term hereof, so long as said second parties shall fully and faithfully comply with all the terms and conditions of this contract by them to be kept and performed. It is understood and agreed that said saloon furniture and fixtures are, and are to remain, the property of the party of the first part, and said parties of the second part agree to execute the customary fixture-receipt of the party of the first part therefor.

"(6) The parties of the second part expressly agree that they will not permit a dram-shop to be conducted on any of the properties of Justine street between Forty-fifth and Forty-sixth streets in which they have any interest of whatsoever kind and nature, during the term hereof, other than at the premises hereinbefore mentioned.

"(7) The party of the first part expressly agrees that so long as the parties of the second part shall have faithfully complied with all the covenants in this contract contained by them to be kept and performed, it will allow the parties of the second part the sum of $25 per month to be applied on beer purchased during the preceding month.

"(8) It is further agreed and understood by and between the parties hereto, that if the parties of the second part shall at any time during the term of this contract make default herein or fail to keep and live up to all the covenants and agreements herein set forth to be kept and performed by them, or shall fail to purchase until the expiration hereof all the draught beer of the party of the first part and the bottled beer and pay therefor as herein provided, then and in that event they shall pay to the party of the first part, as liquidated damages, the sum of $50 per

month for each and every month and fraction of a month covering the unexpired term, viz., from the date of such default to and including April 30, 1917. The parties of the second part agree to pay such liquidated damages to the party of the first part upon demand, and upon the failure of the parties of the second part to pay such liquidated damages to the party of the first part, the party of the first part shall have the right to use any and all necessary and proper means to enforce the payment of the same. It is understood and agreed that in the event the said demised premises are destroyed by fire, then and in that event the parties of the second part shall have six months from the date of such fire during which time to re-build, and during which time the penalty herein mentioned shall be inoperative."

Some time prior to May 2, 1913, a dispute arose between the parties as to whether or not appellant was complying with this contract and with another contract alleged to have been made by it with appellees through its manager, John F. Seitz, on July 18, 1912, in which it agreed to allow the appellees four and one-half barrels of beer on each monthly sale of beer to May, 1913, provided the sale of beer averaged the same as for the months of May and July, 1912. On May 2, 1913, appellees refused to buy any more beer from appellant, moved out the saloon fixtures and furniture loaned to them by the appellant, and made arrangements to use the beer of the Mullen Brewing Company. Appellant then filed its bill of complaint in the superior court of Cook county, alleging full performance of the contract on its part, the breach of the contract by appellees, the removal of the saloon furniture and. fixtures from the premises, and that they were purchasing draught beer to be sold by them on the premises from the Mullen Brewing Company, and represented that they would continue to purchase from the Mullen Brewing Company all the draught beer sold, used or consumed by them in and

about said premises and would no longer purchase draught beer from appellant; that appellant has no adequate remedy at law for the breach of the contract, for the reason that the damages that will be sustained by it by reason of the continued refusal of appellees to carry out and perform the contract cannot be ascertained; that it will suffer irreparable injury unless a court of chancery intervenes, by injunction, to prevent the further violation of the contract by appellees. The bill prayed for an injunction restraining appellees from directly or indirectly purchasing for sale or consumption in said premises, or from selling or permitting to be sold in said premises, any other draught beer than that manufactured and sold by appellant, and from in any way violating the alleged negative covenant contained in the agreement of May 1, 1912.

A motion was made for a temporary injunction, and the cause was referred to the master in chancery to examine into the matter and report his conclusions to the court. The master made a report recommending that a temporary injunction be allowed. Thereupon appellees filed their answer, admitting the violation of the contract on their part and alleging that the refusal to comply with the contract was brought about by reason of the breach of the contract of appellant made by its general manager on July 18, 1912, by which appellees were to be allowed a rebate of four and one-half barrels of beer for each monthly sale of beer to May, 1913, and by the refusal of the appellant to allow them a credit of $25 per month for the months of February, March and April, 1913, as provided in the seventh clause of the contract. The answer further alleged that appellant had an adequate remedy at law in case there had been any breach of the contract because of the provision in clause 8 which provided that in case of a breach of the contract by appellees they shall pay to appellant, as liquidated damages, $50 per month for each and every month and fraction of a month covering the unex-

pired time from the date of such default to and including
April 30, 1917. A motion was then made to dissolve the
injunction upon the bill, answer and affidavits. The court
overruled this motion and appellees perfected an appeal to
the Appellate Court for the First District, where the de-
cree was reversed and the cause remanded to the superior
court with directions to dissolve the injunction, for the rea-
son, as stated by that court in its opinion, that the appellant
had an adequate remedy at law. The case is reported in
183 Ill. App. 352. The cause was then re-instated in the
lower court and an order entered dissolving the injunction
and dismissing the bill for want of equity. Thereupon ap-
pellees filed their petition in that court for assessment of
damages for the wrongful issuance of the injunction. A
hearing was had and appellees were allowed the sum of
$250 as damages for the wrongful suing out of the in-
junction, that being the amount the evidence showed they
had paid their attorneys for services in this particular mat-
ter. From that decree appellant perfected an appeal to the
Appellate Court for the First District, where the decree of
the lower court was affirmed. A certificate of importance
and appeal were allowed by that court and the case is now
in this court pursuant thereto.

The grounds urged for a reversal of the decree are,
(1) that the court erred in dismissing the bill for want of
equity; and (2) that the court erred in allowing appellees
$250 as damages for the wrongful issuance of the tempo-
rary restraining order.

It is insisted the bill only seeks to prevent the breach
of an express negative covenant in the contract and will
require no affirmative action on the part of appellees, and
hence, although it may result, in a sense, in an indirect spe-
cific performance of the contract, it is nevertheless not gov-
erned by the rules of law applicable to such cases, and for
this reason the court should have enjoined the breach of
the contract independently of the question as to whether

269 — 35

or not the appellant had an adequate remedy at law. With this contention we do not agree. The rule is well settled in this State that the jurisdiction of a court of equity to enjoin the breach of a negative covenant in a contract is substantially the same as its jurisdiction to compel a specific performance of such contract and is governed by the same rules and principles of law. (*Welty* v. *Jacobs,* 171 Ill. 624; *Ulrey* v. *Keith,* 237 id. 284.) The rule as to specific performance is, that a contract cannot be specifically enforced unless there is such mutuality in its obligations that it may be enforced by either party against the other. (*Bauer* v. *Lumaghi Coal Co.* 209 Ill. 316; *Ulrey* v. *Keith, supra; Africani Loan Ass'n* v. *Carroll,* 267 Ill. 380.) And this is true although the contract may be of such a character that the difficulties attending its enforcement against one of the parties might not be encountered in enforcing it against the other. (*Rutland Marble Co.* v. *Ripley,* 10 Wall. 339.) The contract in this case is of that character. By its third clause appellant agrees to sell and deliver to appellees beer for the period of time mentioned in the contract at the price therein named, and by the fifth clause to loan appellees aₒ first-class set of saloon furniture and fixtures so long as they shall faithfully comply with all the terms and conditions of the contract. The principal obligation assumed by appellant is to manufacture and sell its product to appellees for the period covered by the contract. This involves a knowledge of appellant's process of manufacture, skill and personal labor in making such product, and is, in effect, a personal contract to manufacture and deliver to appellees draught beer of a particular kind and quality, viz., "City" beer and "Cabinet" beer, and should appellant refuse to comply with this provision of the contract a court of equity would be powerless to compel specific performance of the same without taking over and supervising the business of appellant for the whole unexpired term of the contract. This, courts of equity will not

attempt to do. (*Rutland Marble Co.* v. *Ripley, supra;* *Voight·Brewing Co.* v. *Holtz,* 168 Mich. 552.) It will thus be seen that the contract lacks mutuality, and is one which, had the breach been committed by appellant, no specific performance of the same could have been decreed by the court but appellees would have been left to seek their remedy in an action at law for damages for a breach of the contract. If we treat the rights of the parties as being reciprocal in the premises, as they are, then we must hold that the court did not err in dismissing the bill for want of equity unless it appears that appellant will suffer an irreparable injury for which the law affords it no adequate remedy at law.

This brings us to the question, has appellant an adequate remedy at law? By the eighth paragraph of the contract it is specifically provided that if appellees shall at any time fail to keep and live up to the covenants and agreements of their contract, and shall make default in part of the contract and fail to purchase all of the draught beer of the party of the first part as therein provided for, then and in that event they shall pay to the party of the first part, as liquidated damages, the sum of $50 per month for each and every month and fraction of a month covering the unexpired period of the contract from the date of such default to and including April 30, 1917. It will thus be seen that the parties themselves have by the express terms of their contract made provision for its breach and for the amount of damages that shall be paid in case of such breach, by way of liquidated damages, unless the same is held to be a penalty. That the object and purpose of the contract on the part of appellant were to secure to it the profits from the sale of its beer on the premises during the period of time covered by the contract is very clear from a consideration of the whole instrument. These profits, from their very nature, were of an uncertain character and difficult to estimate or ascertain with any degree

of certainty. No one could estimate the amount of draught beer of the different kinds appellees would use per month, and each month, during the life of the contract. This must have been fully known to both the contracting parties, and they may well be presumed to have taken all of these matters into consideration in making the contract and fixing the amount of damages in case the contract was broken. Both parties were undoubtedly familiar with the business and deemed themselves better able to estimate and compute the amount of damages from that source than anyone else, and believed that by this provision in the contract they had done so. It does not appear to us that the amount so estimated and fixed by them is either unreasonable or disproportionate to the damages which might ensue from a breach of the contract. Under such circumstances the stipulated sum will not be held to be a penalty, where, from a consideration of the whole instrument, its object and purpose and the circumstances surrounding the parties at the time of its execution, it is clear the parties intended it as the measure of compensation in case of a breach of the contract; (19 Am. & Eng. Ency. of Law,—2d ed.—398; 13 Cyc. 93, 94, 98;) and there is nothing to indicate fraud or circumvention, or that the amount specified is unreasonable or disproportionate to the amount of damages which might reasonably be anticipated as likely to result from a breach of such contract. (*Gobble* v. *Linder,* 76 Ill. 157; *Pinkney* v. *Weaver,* 216 id. 185.) In this respect this case is clearly distinguishable from *Southern Fire Brick Co.* v. *Garden City Sand Co.* 223 Ill. 616, in which the property (real estate) which was the subject matter of the contract had been disposed of, the contracting party owning the real estate was insolvent, and there was no provision in the contract for the payment of any amount as liquidated damages in case of its breach. The same may be said to be true of substantially all of the other cases cited by appellant. They are therefore not in point here, where it is ad-

mitted that appellees are perfectly solvent and the damages in case of a breach of the contract have been estimated and fixed by the parties.   If an injunction were to be issued, under the facts admitted in this case, to prevent a breach of this agreement, we fail to see how an injunction could be refused in any case to prevent the breach of all similar contracts where a business man agreed to sell in his place of business the products of a certain dealer and to refuse to sell any others.   This would, in our judgment, be opposed to both reason and authority.   (High on Injunction,—4th ed.—1107; *Hair Co.* v. *Huckins,* 5 C. C. A. 522; *Steinau* v. *Cincinnati Gaslight and Coke Co.* 48 Ohio St. 324; *Hardy* v. *Allegan Circuit Judge,* 147 Mich. 694; *Tawas and B. C. R. R. Co.* v. *Circuit Judge,* 44 id. 479; 7 N. W. Rep. 65.)   For these reasons we think the court did not err in dissolving the injunction and dismissing appellant's bill for want of equity.

The sole object of the bill in question was for injunction, and at the instance of appellant a temporary restraining order was issued.   Its issuance was wrongful, and as a result of its wrongful issuance appellees were put to an expense in and about their endeavors to have the same dissolved, as the evidence shows, of upward of $250 in attorneys' fees alone.   The court below allowed them $250 as their damages for the wrongful suing out of the injunction and assessed the same against the appellant.   The amount allowed was well within the range of the testimony as to the value of the services rendered, and upon a consideration of the record we do not consider the amount allowed excessive.

For the reasons given, the judgment of the Appellate Court will be affirmed.        *Judgment affirmed.*