### International Mutual Fire Insurance Company, Appellee, v. Griff S. Carrington, Appellant.
### Gen. No. 31,144.

1. INJUNCTIONS—*restraining breach of negative covenant in contract of employment.* The rule that equity will not enjoin the breach of a negative covenant where the effect of such decree will be to compel performance of a contract without mutuality of obligation, has no application to a covenant in a contract of employment of an insurance agent whereby he agrees not to solicit insurance for himself or for another during a period of one year after the termination of his employment with the complainant, in the territory for which he was employed.

2. INJUNCTIONS—*when equity will not refuse to restrain breach of negative covenant in contract of employment as without consideration.* Equity will not refuse to enjoin the breach of a negative covenant in a contract of employment upon the ground that it was without consideration, where by the express terms of the contract such covenant was a part of the consideration for the employment.

3. INJUNCTIONS—*when equity will not refuse to restrain breach of negative covenant in contract of employment as harsh and unfair.* A covenant in the contract of employment of an insurance agent whereby he agreed not to solicit insurance for himself or for another during a period of one year following the termination of his employment by the complainant, in the territory for which he was employed, is not so harsh and unfair that equity will refuse to enjoin its breach, where it appears that the defendant, an intelligent business man, entered into the contract voluntarily and as the result of negotiations in which the parties dealt on equal terms.

4. INJUNCTIONS—*sufficiency of answer to bill seeking relief against breach of covenant to raise question as to performance by complainant.* An allegation in the answer to a bill seeking an injunction against breach of a negative covenant in an employment contract, that "complainant failed and neglected to pay him (defendant) all the commissions, salaries and bonuses he was led to believe he would receive," was not an averment sufficient to raise the question whether there had been full performance of the contract on the part of the complainant.

Interlocutory appeal by defendant from the Superior Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1925. Affirmed. Opinion filed June 14, 1926.

EKERN & MEYERS and LUTHER F. BINKLEY, for appellant.

THOMAS W. REILLY, for appellee.

MR. JUSTICE JOHNSTON delivered the opinion of the court.

This is a bill in equity brought by the International Mutual Fire Insurance Company, the complainant, against Griff S. Carrington, the defendant, to restrain the defendant from soliciting insurance for any other

210 APPELLATE COURTS OF ILLINOIS.

International Mutual Fire Ins. Co. v. Carrington, 241 Ill. App. 208.

person, firm, association or corporation than the complainant, in certain territories in the city of Chicago, in violation of the defendant's covenant not to solicit insurance in such territories.

Motion was made by the complainant for a temporary injunction. A hearing was had on the bill, answer and affidavits, and the court granted a temporary injunction as prayed for in the bill. From the order granting the temporary injunction, the defendant has prosecuted this appeal.

The principal grounds on which the defendant asks for a reversal of the order are (1) that there was a want of mutuality in the contract, and that where there is a want of mutuality in a contract equity will not enjoin the breach of a negative covenant; (2) that the covenant sought to be enjoined was without consideration; (3) and "that the entire contract is so hard featured, palpably one sided and unfair that a court of equity will not grant any relief whatever under it."

The pertinent allegations in the bill, as they appear in the abstract, are in substance as follows: That the complainant "is an insurance corporation with its principal office in the City of Chicago; that long prior to, on October 8, 1925, and ever since it has been engaged in writing fire insurance, the greater portion of which is on the industrial plan; that in order to do so it employs agents to solicit applications for insurance and collect premiums; that each agent is assigned to a particular territory called a 'debit'; that such agents became familiar with the company's business and the people who live in the 'debit' and have more or less influence over such people in matters of insurance, and that such agents, if not prevented are in a position to do injury to complainant's business in such 'debit'; that the building of a 'debit' is very expensive, and becomes very valuable to the company in that premiums are collected weekly from persons holding policies in such 'debit,' and that to interfere with such

International Mutual Fire Ins. Co. v. Carrington, 241 Ill. App. 208.

'debit' and cause policy holders to drop their policies will result in irreparable injury to complainant; that as part of the consideration of complainant's employment of its agents it requires each agent to agree that he will not for a period of one year, after the termination of his employment, solicit insurance for himself or any other person in the 'debits' on which he has worked, nor interfere with the business of the complainant, nor directly or indirectly induce any of complainant's employees to abandon complainant's employment; that on October 8, 1925, complainant employed defendant as an agent in 'debit' No. 4, which was from 26th street to 30th street and from Indiana avenue to Wentworth avenue, in the City of Chicago, and the City of Chicago Heights; that he was employed by contract which is attached to the complaint and made part thereof; that the defendant contrary to the terms of said contract did solicit insurance for other companies during the time he was employed by complainant; that the defendant terminated his services with complainant on January 11, 1926, and entered the employ of others, namely, United Lloyds of America and Meyers-Campbell Co. for whom defendant is now soliciting insurance in the 'debit' for which he worked for complainant, and is trying to induce complainant's policy-holders to take policies in the companies for which he now works; that complainant is advised that defendant is falsely stating to certain of complainant's policyholders and others that complainant has or is going out of business; that the company for which defendant is working has taken over complainant and its business, for the purpose of inducing such persons to drop complainant's policies and take others; that unless defendant is restrained by injunction he will continue to so do, as a result whereof, complainant will suffer irreparable injury, because defendant is insolvent."

212 APPELLATE COURTS OF ILLINOIS.

International Mutual Fire Ins. Co. v. Carrington, 241 Ill. App. 208.

The covenant in which the defendant agreed not to solicit insurance is as follows:

"I agree that in the event my services with the Company should be discontinued at any time, I will not solicit fire insurance, for myself or for any other person or corporation, in any territory in which or any debit on which I may have worked for the International Mutual Fire Insurance Company during this employment, for a period of one year from the termination of my employment; nor will I interfere with, or procure or assist any other person to interfere with any of the business of the International Mutual Fire Insurance Company. I agree that during the year following the termination of this employment I will not, directly, or indirectly, induce or attempt to induce any employe of said Company to quit or abandon the Company's employ for any purpose whatsoever. In view of the practical impossibility of determining by computation or legal proof the exact amount of damages resulting to the Company from a violation by me of the provisions of this section, the sum of $300.00 is hereby agreed upon as the liquidated damages for my breach of this section of this agremeent, which I agree to pay on demand, and the Company shall have the right to set off said amount against any amount due or to become due from it to me. It is mutually understood that the fixing of said amount as liquidated damages shall not be construed as a release or waiver by the Company of any right to proceed in equity or otherwise to compel the fulfillment or prevent the violation by me of any of the provisions of this section."

In regard to the allegations of the bill counsel for the defendant in their brief state their position as follows:

"We do not * * * attack the truthfulness of the allegations of the bill of complaint, but limit our arguments to their sufficiency as a matter of law and equity

to justify any relief whatever. We readily can see that the statements of fact set forth in the bill of complaint are such that, if true, they would justify an injunction, then the issuance of an injunction is a matter of sound discretion of the trial court regardless of whether or not they are denied by answer, affidavit or otherwise, but counsel has not cited nor have we been able to find any case holding that the trial court has any discretion whatever to grant a temporary injunction, where the matters and things alleged in the bill of complaint are not sufficient as a matter of law to justify the relief sought.''

We do not think that the contention of counsel for the defendant that a court of equity should not enjoin the breach of the negative covenant in the case at bar is correct. The argument of counsel for the defendant proceeds on the theory that in enforcing the negative covenant the court is, in effect, compelling a specific performance of the contract, and that the rule is well settled in Illinois that a contract should not be enforced specifically unless there is such mutuality in its obligations that it may be enforced by either party against the other. In support of their contention counsel for the defendant rely mainly on the case of *The Bartholomae & Roesing Brewing & Malting Co. v. Modzelewski*, 269 Ill. 539, 545, 546. We recognize the rule that a contract should not be specifically enforced unless there is such mutuality in its obligations that it may be enforced by either party against the other. But in our opinion the negative covenant in the case at bar is not such that the enforcement of it would be, in effect, compelling the specific performance of the contract. In the negative covenant the defendant simply agreed not to solicit insurance in the specified territories after the termination of the contract. When the defendant was enjoined from soliciting insurance in those territories, he was not by such injunction, in effect, compelled to

214     APPELLATE COURTS OF ILLINOIS.

International Mutual Fire Ins. Co. v. Carrington, 241 Ill. App. 208.

do any affirmative specific act. He was merely enjoined from doing a particular act, without any affirmative implications following upon such injunction. In other words, the negative covenant does not connote an affirmative act.

Since we are of the opinion that the element of specific performance is not involved in the negative covenant, the rule that a contract will not be enforced specifically unless the remedy of specific performance is mutual is not applicable to the case at bar.

It has been held in cases involving breaches of negative covenants, which are analogous to the negative covenant in the case at bar, that injunction would lie to restrain the breaches of such negative covenants. *Southern Fire Brick & Clay Co. v. The Garden City Sand Co.*, 223 Ill. 616, 626; *Andrews v. Kingsbury*, 212 Ill. 97, 98.

The case of *The Bartholomae & Roesing Brewing & Malting Co. v. Modzelewski, supra,* cited by counsel for the defendant, is materially different from the case at bar. In the former case, in a contract between the Brewing Company, the complainant, and the defendants, the complainant agreed to manufacture and sell its particular kind of beer to the defendants, and the defendants agreed to use continuously and exclusively the beer of the complainant. The defendants violated their agreement by refusing to buy beer from the complainant, and by making arrangements to buy beer from another company. A motion was made by the complainant to restrain the defendants from purchasing beer from any other company than the complainant. The court held that injunction would not lie for the reason that the effect of the injunction would be to compel a specific performance of the contract by the defendants, and that there was no mutuality of the remedy by specific performance as a court of equity would be powerless to compel the complainant to sell the defendants its beer "without tak-

International Mutual Fire Ins. Co. v. Carrington, 241 Ill. App. 208.

ing over and supervising the business" of the complainant. In distinguishing the case of *The Bartholomae & Roesing Brewing & Malting Co. v. Modzelewski, supra,* from the case of *Witkowsky v. Affeld,* 283 Ill. 557, the court said in speaking of the bill in the latter case (p. 575): "If the sole purpose of this bill was to enforce a contract specifically, and was, in effect, only a prayer for mandatory injunction to enforce a negative covenant in a contract, requiring specific performance in order to so enforce it, then" the case of *The Bartholomae & Roesing Brewing & Malting Co. v. Modzelewski* "would control."

The answer to the second objection of counsel for the defendant, that the covenant sought to be enjoined was without consideration, is that by the terms of the contract that covenant was part of the consideration of the employment of the defendant by the complainant.

We do not think that the third objection of counsel for the defendant, that the contract is so harsh and unfair that equity will not enforce it, is sound. The defendant, who was an intelligent business man, entered into the contract voluntarily, and there is no suggestion that the parties did not deal with each other on equal terms. Furthermore, after assuming the obligations of the contract, the defendant admittedly violated the contract while it was still in existence by soliciting insurance from other insurance companies than the complainant.

Counsel for the defendant further contend that the bill of complaint fails to allege that the complainant fully performed the contract on its part. This question was not raised in the trial court by the pleadings or otherwise. Apparently, on the hearing in the court below, it was admitted that the complainant had performed its part of the contract except as specifically alleged in the answer of the defendant that the "complainant failed and neglected to pay him all the com-

216     APPELLATE COURTS OF ILLINOIS.

missions, salaries and bonuses he was led to believe he would receive.'' This allegation is insufficient as it does not aver that the complainant failed and neglected to pay the defendant commissions, salaries and bonuses due to the defendant under the contract, but alleges that the complainant failed and neglected to pay the defendant all of the commissions, salaries and bonuses that the defendant ''was led to believe he would receive.''

For the reasons stated the order of the trial court is affirmed.

*Affirmed.*

