Paysoff Tinkoff, etc., Appellant, v. David Wyland et al., Appellees.

Gen. No. 36,513.

McSurely, J., dissenting.

Opinion filed November 6, 1933. Rehearing denied and opinion modified November 20, 1933.

Paysoff Tinkoff and Arthur Goldblatt, for appellant; Edward Goldblatt, of counsel.

Markheim & Allie, for appellees; Harry Markheim and A. R. Miller, of counsel.

Mr. Presiding Justice Matchett delivered the opinion of the court.

This is an appeal by complainant from a decree which denied his motion for a temporary injunction, sustained the demurrer to the bill and dismissed it for want of equity, and the question to be decided is whether the bill states a cause of action for equitable relief.

The averments in substance are that complainant is a licensed attorney at law and certified public account-

ant; that he specializes in federal tax matters in which he is authorized to practice; that April 1, 1929, he employed defendant Wyland, who is an expert accountant.

A written contract between the parties was executed November 6, 1929, which provided that either party might terminate the contract by giving two weeks' written notice, or it might be immediately terminated for cause by complainant. There was a further agreement that during the term of employment and for two years after its termination defendant Wyland should not directly or indirectly solicit any claims that might come to his knowledge by reason of his employment, "it being specifically understood that the Rights of Solicitation, Representation and Prosecution of any of the Claims of the said Clients of Paysoff Tinkoff & Co., Actual or Prospective, shall be restricted, not only to those Cases which were pending in the Offices of Paysoff Tinkoff & Co., at the termination of your employment with Paysoff Tinkoff & Co., but also to any Claims that may arise within the said period of Two (2) Years subsequent to the termination of your Employment with said Paysoff Tinkoff & Co. with any of the Clients, Actual or Prospective, of Paysoff Tinkoff & Co. at the time of the termination of your employment with Paysoff Tinkoff & Co."

Defendant Wyland entered upon his employment and was given access to the confidential files of complainant and obtained an intimate knowledge of the business. The other defendants were at this time clients of complainant, and Wyland in the course of his employment obtained knowledge of claims pending in their behalf.

The bill avers that Wyland was the main accountant of complainant and was trusted with all the matters and things connected with the business of these clients and was a confidential agent and employee; that he

was taken into all conferences on these matters with complainant and other conferees and fully trusted in every manner as a close friend and confidant, whereby, it is alleged, a fiduciary relationship existed between complainant and Wyland on these matters, as well as on the business of complainant in general; that Wyland thereby owed to complainant by virtue of this fiduciary relation, as well as by reason of the written contract, a duty "to faithfully perform the services as such trusted agent and employee and to discharge his duties in behalf of your Orator faithfully as required by such fiduciary relation, as well as said written contract."

The bill also avers that December 13, 1932, and for several days prior thereto, defendant John Griffiths had been negotiating with complainant directly and through Wyland as such confidential agent, for complainant to take charge of a large amount of work for the John Griffiths & Son Co. and also for John Griffiths and for the continuance of the services of complainant on the matters then pending for these clients; that complainant in conference with Wyland considered the necessary usual and reasonable fees for services desired by these clients; that an estimate of the same was made amounting to $73,000; that complainant confiding in Wyland authorized him to negotiate with John Griffiths for the purpose of closing contracts for said work, and that Wyland on December 13th went to the office of Griffiths and violating the confidence reposed in him and disregarding his fiduciary relationship and his obligations under the contract, entered into negotiation with John Griffiths and George W. Griffiths for and in behalf of himself individually to do and perform this work for them, instead of securing the same for complainant, and without any knowledge on the part of complainant of his intention so to do until Wyland returned to the office of complainant

and informed him that he (complainant) would not get any more business from these clients, and that Wyland had accepted employment from them to perform these services. Complainant immediately called Wyland's attention to the written contract, to the fiduciary relationship, etc., and that notwithstanding, Wyland persisted in his conduct in disregard of the contract and the relationship, and on December 14, 1932, entered upon the work of said business as an employee of the clients and continues therein in violation of complainant's rights.

The bill avers that there is no other person or persons sufficiently familiar with the business of these clients except Wyland and complainant to take charge of the work and perform the same within the time when it would be necessary to have it done; that the clients are in immediate need of services upon their income taxes for the year 1932; that John Griffiths Investment Trust is also in need of immediate services before the officials of the treasury department that require the knowledge and experience of the business possessed only by complainant and Wyland; that complainant is unjustly, inequitably and wrongfully deprived of this work for these various clients, for which he would receive compensation of $60,000; that he and other employees had for two months preceding December 14, 1932, worked upon these matters at an expense of more than $1,000 in anticipation of contracts to do the work.

The bill also avers that while defendant Wyland professed the utmost loyalty and advised complainant in his negotiations with the said clients and, in particular, advised him to insist on larger compensation and not to agree to the terms desired by the clients, this advice was not given by Wyland in good faith but was given for the purpose of deceiving complainant and of preventing him from making satisfactory terms

with the clients, so that Wyland could take advantage of the same and thereby secure the employment for himself as well as the compensation therefor and deprive complainant of the same; that to that end he requested that he be permitted to talk with John Griffiths and George W. Griffiths and advised complainant against any other person being present during the conversation, in order that he might negotiate with the clients in his own behalf and against the interests of complainant; that complainant fully confiding in Wyland, for the reasons set forth, consented that the negotiations be conducted by Wyland for complainant and without any other person present representing complainant; that complainant was deceived and misled by Wyland, in that Wyland concealed his dissatisfaction as an employee and agent of complainant; that Wyland owed the duty to complainant to divulge to complainant his dissatisfaction and the fact that he was seeking other employment for several months prior to December 13, 1932; that if complainant had known of this dissatisfaction he would not have trusted these important negotiations to Wyland, and that all these things were concealed by Wyland for the purpose of deceiving complainant; that Wyland knew that complainant had performed services for John Griffiths to cause and maintain an equal distribution of his estate in favor of his daughters and against the financial interest of George W. Griffiths; that George W. Griffiths on account of these facts was opposed to complainant's receiving the work and having compensation therefor, "and that by knowing said facts, said David Wyland was enabled to take advantage of the same in connection with the said George W. Griffiths in obtaining said work and to use said George W. Griffiths in effecting the consent of his father, the said John Griffiths, to the employment of

said Defendant, David Wyland, by said clients, instead of your orator.''

The bill avers that Wyland and the other defendants conspired together to injure the business of complainant and to deprive him of gains and profits contrary to the fiduciary relationship and the terms of the written contract; that the other defendants are now utilizing the services of Wyland and are employing him solely because of said knowledge and information, which these defendants well knew when they employed Wyland that they had no right to receive.

The contract is attached to the bill and made a part of it. The bill prayed for an injunction and for other relief.

It is urged that the injunction was properly denied for the reason that the bill discloses that complainant came into court with unclean hands, in that he by his bill divulged confidential communications of his clients contrary to his professional duty, namely, communications concerning the desire of the elder Griffiths with reference to the manner in which his estate should be distributed. The rule of equity which forbids relief to him who is guilty of inequitable conduct applies only where the improper conduct concerns the very transaction of which complaint is made. *Carpenters Union v. Citizens Committee,* 333 Ill. 225; *Messenger Publishing Co. v. Mokstad,* 257 Ill. App. 161. We do not regard the information here disclosed as so closely connected with the controversy as to call for the application of the rule. Moreover, this defense, if it exists, would be properly raised by answer. The information divulged may have been with the consent of the clients for aught that appears from this record, and we think it is not necessary that such consent should be negatived by the bill. The decree cannot be sustained upon this theory.

In the second place, defendants urge that restrictive covenants in contracts of employment are distinguishable from such covenants in the sale of a business and that they are reluctantly enforced in equity. There is no doubt the distinction exists, as the cases cited and many other cases hold. *Northwest Side Lumber Co. v. Layton,* 239 Ill. App. 82; *Atwood v. Lamont,* 3 K. B. 571; *Kaumagraph Co. v. Stampagraph Co.,* 188 N. Y. S. 678.

They argue further that the allegations of the bill fail to show a violation of the negative covenants contained in the contract, and say that even if such violation is conceded, complainant is not entitled to relief because the services of Wyland were neither unique nor extraordinary, citing *Corpin v. Wheatley* (1929), 227 App. Div. 212, 237 N. Y. S. 205. They say that Wyland was not disclosing any trade or business secrets, because the knowledge of an accountant is general knowledge and skill in accounting is not a trade secret and cannot be copyrighted, because complainant had no expectancy of business from the Griffiths, representing a property right which he is entitled to have protected by an injunction and because defendants other than Wyland had a right to end the relationship of attorney and client at any time they might wish either with or without cause. They say complainant can readily engage an equally capable substitute employee; that the effect of enforcing the contract by injunction would be harsh and oppressive, and that the only cases where equity will enjoin the breach of a negative covenant in a contract of employment are those where the employer was in direct and continuing competition with his former employee. *Gilbert v. Wilmer,* 168 N. Y. S. 1043, 1044.

All these propositions (as we read the case presented by the bill) may be conceded without destroying its equity. This court has held that in the absence of

a restrictive covenant an injunction will not ordinarily issue at the suit of a former employer to restrain the employee from solicitation of business from customers of the employer, and we adhere to that rule for the reasons stated in *American Cleaners & Dyers v. Foreman,* 252 Ill. App. 122, notwithstanding respectable authority to the contrary. However, as we read the case made by this bill, the principle which controls creates an exception to this general rule. It is that while the relationships of employer and employee, principal and agent, attorney and client, master and servant, exist, the duties of the parties are reciprocal and fundamental and require of the employee, agent, attorney or servant the fundamental virtue of loyalty to the person whom he represents. The employee may sever the relationship at will, but while it exists he may not without dishonor betray the interests of the one whom he represents. If the facts averred in this bill are true, defendant Wyland, while the relationship of employer and employee existed and while he at his own request was given exclusive charge of securing the renewal of these contracts, contrived intentionally to secure such renewal for himself to the exclusion of his employer for whom he was obligated to obtain them.

The general rule is as stated by this court in *Rabinovich v. Reith,* 120 Ill. App. 409, and is in harmony with the Restatement of the Law of Contracts, sections 379 and 380 (2). In 32 Corpus Juris, section 309, the exception is stated, as follows:

"The general rule has no application to a case involving the betrayal of a trust and confidence reposed in the employee by his employer by attempting to take away for his own benefit and in direct violation of his express contract his employer's customers, knowledge of whom he had acquired in the course of the performance of his duty as an employee." The author cites *Cahill v. Madison,* 94 Ill. App. 216. It there appeared

that Cahill employed Madison as a salesman of its teas, coffees and spices, and that after two years of service, during which he had charge of a sales route, Madison left the employment and engaged in business for himself. Cahill filed a bill praying that the court by injunction might enforce a covenant restricting Madison from engaging in business for himself for a period of one year after leaving the employ of Cahill. The chancellor dismissed the bill, but the decree was reversed by this court, the opinion stating that while as a general rule equity would not by injunction interfere to restrain the violation of a contract for personal services (citing *Welty v. Jacobs,* 171 Ill. 624, and other cases), such rule was not applicable to the circumstances there appearing; that it was not a question of enforcing a restrictive covenant of a contract but of a defendant betraying the trust and confidence reposed in him by his employer. The doctrine is sustained by other Illinois authorities (*Fairman v. Bavin,* 29 Ill. 75; *Davis v. Hamlin,* 108 Ill. 39); was approved by this court in *Messenger Publishing Co. v. Mokstad,* 257 Ill. App. 161; has been held applicable to a fire insurance agent in *International Mut. Fire Ins. Co. v. Carrington,* 241 Ill. App. 208; has been held by the English courts applicable to a lawyer's clerk in *Nicholls v. Stretton,* 7 Beav. 42, and S. C. 10 Q. B. 346; *Howard v. Woodward,* 5 N. R. S. 8, 34 L. J. Ch. 47, 10 Jur. (N. S.) 1123, 11 L. T. 414, 13 W. R. 132; *May v. O'Neill,* 44 L. J. Ch. 660, and *Lewis v. Durnford,* 24 Times Law Reports, p. 64, and has been held applicable to an accountant in *Racine v. Bender,* 141 Wash. 606, 252 Pac. 115, and *Scott v. Gillis,* 197 N. C. 223, 148 S. E. 315, and is now held applicable to this case.

It has been urged that equity is without jurisdiction because the contract between the parties provides for liquidated damages in case of a breach of it.

The provision of the contract in this regard is as follows:

"(8)   It is also further understood that if the above, provision of the contract is violated, that the Amount of Two Thousand Five Hundred ($2,500.00) Dollars shall become due and payable to Paysoff Tinkoff & Co. as damages incurred,—said amount being considered as Liquidated Damages, and not as a Penalty, for said violation, due to the fact of the difficulty in proving Actual Damages,—or the Actual Damages incurred, if the said Actual Damages are greater than the Liquidated Damages of Two Thousand Five Hundred ($2,500.00) Dollars, aforementioned."   Defendants cite *American Dental Co. v. Central Dental Laboratory Co.*, 256 Ill. App. 279, and *Bartholomae & Roesing Brewing & Malting Co. v. Modzelewski*, 269 Ill. 539.

In 32 Corpus Juris, p. 196, secs. 301 and 302, it is pointed out that while some courts have held that a provision for liquidated damages prevents equity from granting an injunction, others have held to the contrary upon the theory that the provision should be regarded as additional security for the performance of the covenant and not as a substitute for performance.   The true rule is stated to be: "If liquidated damages are provided for in case of a breach, and it appears that the intention was to give the party the alternative to perform or pay, or that the liquidated damages should be an exclusive remedy, the breach will not be enjoined; and it has been held that this is so, although defendant is insolvent.   Nevertheless, the equitable jurisdiction of the court to enforce a negative covenant is not excluded merely by reason of the fact that in addition to the covenant the contract contains a stipulation for liquidated damages.   It is a question of intent to be deduced from the whole instrument and the surrounding circumstances whether

the provision for liquidated damages was intended to be an exclusive remedy.''

Defendants seem to contend that it is the rule in Illinois that equitable relief will be denied in every case where there is a provision for liquidated damages and rely on the cases above cited. In the *Dental Co.* case, 28 employers filed their bill against certain employees to secure the enforcement of a provision in a contract of employment that all controversies concerning labor unions should be determined by a two-thirds vote of the parties thereto. The contract provided that any party violating it should pay a specified sum as liquidated damages. One clause of the agreement recited that since liquidated damages might be inadequate, in addition thereto an injunction may issue without notice. It was conceded by complainants that this provision would not make it the duty of a court to grant an injunction unless it should appear that it was equitable to do so. The opinion cited the *Bartholomae, etc., Co.* case and held that upon the whole case an injunction ought not to be granted. It is apparent the provision as to liquidated damages was not deemed controlling. The *Bartholomae, etc., Co.* case has been criticized (see Illinois Law Bulletin, vol. 1, p. 117) as departing from the rules theretofore laid down in *Lyman v. Gedney,* 114 Ill. 388; *Barrett v. Geisinger,* 179 Ill. 240; *Mikelaickzak v. Kruppa,* 254 Ill. 209, and *Davis v. Isenstein,* 257 Ill. 260. These last named cases in substance hold that the mere presence in the contract of a provision for liquidated damages will not prevent equitable relief by way of injunction or specific performance unless the stipulation amounts to an option in the alternative of one of two things, namely, the performance of the acts or the payment of a certain amount of money in lieu thereof.

It would scarcely seem that the mere intention of the parties to a contract should control the jurisdic-

tion of a court of chancery although it would be possible to reconcile the *Brewery* case with the other decisions of Illinois courts upon that theory. After all, it would seem that what the courts have really done in all these cases is to apply the broader rule laid down in *Epstein v. Gluckin*, 233 N. Y. 490: "What equity exacts today as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression either to plaintiff or to defendant. (Williston, *supra*; Stone, *supra*; Ames, Lectures on Legal History, p. 370; Lewis, Want of Mutuality in Specific Performance, 40 Am. Law Reg. [N. S.] 270, 382, 447, 507, 559; 42 id. 591.)"

Notwithstanding the provision in the contract for liquidated damages, we are of the opinion that the bill in this case demands an answer. The decree is therefore reversed and the cause remanded with directions that defendants answer.

*Reversed and remanded with directions.*

O'CONNOR, J., concurs.

McSURELY, J., dissenting: In my opinion the decree dismissing the bill should be affirmed.